**Sharon K. SARKO, Plaintiff,**

v.

**PENN–DEL DIRECTORY COMPANY, Defendant.**

**Civil Action No. 96–4428.**

United States District Court, E.D. Pennsylvania.

Jan. 22, 1997.

---

Donald P. Russo, Allentown, PA, for Plaintiff.

Imogene E. Hughes, Kleinbard, Bell & Brecker, Philadelphia, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

Before the Court is Defendant's Motion to Compel Independent Medical Examination of Plaintiff and to Compel Plaintiff to Authorize Release of Medical Records. For the following reasons, the Motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Sharon H. Sarko was employed by Defendant Penn–Del Directory Company from June 10, 1991 until June 29, 1994, when Defendant discharged her allegedly for chronic tardiness. Plaintiff claims in this action, however, that her discharge violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Plaintiff seeks compensatory and punitive damages, injunctive relief and attorney's fees for these alleged violations.

The instant motion concerns Plaintiff's ADA claim. Plaintiff alleges that, while she was employed by Defendant, she suffered from clinical depression requiring medication, that this medication caused her difficulty waking up in the morning, that Defendant was aware of her condition, and that, despite her request for a reasonable accommodation of this condition, Defendant unlawfully fired her. In an effort to obtain discovery concerning these allegations, Defendant requested that Plaintiff (1) submit to a psychiatric examination by Defendant's expert, and (2) authorize the release of her medical providers' records, including those of her primary treating psychiatrist. Plaintiff refused both requests and the instant motion resulted.

## DISCUSSION

### I. The Medical Records

 Defendant seeks the records of "each of Sarko's medical providers that had been identified in response to Sarko's interrogato-

ries." (Def.'s Mem. at 3.) Defendant seeks the records of Plaintiff's primary treating psychiatrist in particular, but does not specify which other providers its motion concerns. Still, to the extent that the records of any of the providers contain information relating to the nature of Plaintiff's alleged disability, her need for medication, or the side effects of the medication, they are clearly relevant under Rule 26(b)(1) to Plaintiff's ADA claim. The questions for present purposes are whether these records are privileged from discovery and, if so, whether any applicable privileges have been waived.

 Plaintiff argues that the records are privileged under the Pennsylvania statute providing that "[t]he confidential relations and communications between a psychologist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client." Pa.Cons. Stat.Ann. § 5944. It is well-settled, however, that, under Federal Rule of Evidence 501, the federal common law of privileges applies to federal question cases such as this. *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 103 (3d. Cir.1982); *Bayges v. S.E.P.T.A.*, 144 F.R.D. 269, 271 (E.D.Pa.1992).[1] Under a Supreme Court decision handed down just last year, the federal common law now uniformly embraces a psychotherapist-patient privilege. The Court held in *Jaffee v. Redmond* that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under [Rule 501]." —— U.S. ——, ——, 116 S.Ct. 1923, 1931, 135 L.Ed.2d 337 (1996). This privilege covers confidential communications to "licensed psychiatrists and psychologists" and is not "contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure." *Id.* at —— ——, 116 S.Ct. at 1931–32. It therefore clearly covers the records of Plaintiff's psychiatrist at issue here.

---

1. The Federal Rules of Evidence also provide that the federal law of privileges applies at all stages of the litigation. *See* Fed.R.Evid. 1101(c); *Bayges,* 144 F.R.D. at 271 and n. 2.

Defendant responds that Plaintiff has waived any applicable privilege by placing her mental condition directly at issue in this action. Defendant cites *Whitbeck v. Vital Signs, Inc.*, 163 F.R.D. 398 (D.D.C.1995), for the proposition that the privilege may be waived in such a manner, but this decision rests on District of Columbia law. The Supreme Court did not address waiver of the federal common law privilege in *Jaffee*, however, explicitly leaving the contours of the new privilege to be fleshed out over time on a case-by-case basis. *Id.* at ——, 116 S.Ct. at 1932. We must therefore first ask whether placing one's mental condition at issue in a civil action waives the federal common law psychotherapist-patient privilege, and, if so, whether the privilege has been so waived here. We answer both questions in the affirmative.

■ We find that a party waives the privilege by placing her mental condition at issue for several reasons. First, our Court, which recognized a qualified federal common law psychotherapist-patient privilege prior to *Jaffee, see Mines v. City of Philadelphia*, 158 F.R.D. 337 (E.D.Pa.1994); *Siegfried v. City of Easton*, 146 F.R.D. 98 (E.D.Pa.1992), has previously held that a litigant may waive the privilege in this manner. *See Topol v. Trustees of University of Pennsylvania*, 160 F.R.D. 476, 477 (E.D.Pa.1995); *see also Price v. County of San Diego*, 165 F.R.D. 614, 622 (S.D.Cal.1996) (recognizing federal common law privilege for psychotherapist-patient communications but holding that litigant waived privilege by raising issue as to her psychological state). Second, the Supreme Court specifically analogized the policy considerations supporting recognition of the privilege in *Jaffee* to those underlying the attorney-client privilege, which is waived when the advice of counsel is placed at issue in litigation. *See, e.g., Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir.1995); *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir.1994); *see also Rost v. State Bd. of Psychology*, 659 A.2d 626, 629 (Pa.Cmwlth.1995) (reasoning that Pennsylvania's statutory psychotherapist-patient privilege is waived by placing communications at issue by analogy to the state's attorney-client privilege), *app. denied*,

543 Pa. 699, 670 A.2d 145 (1995); *Premack v. J.C.J. Ogar, Inc.*, 148 F.R.D. 140, 144–45 (E.D.Pa.1993) (predicting that Pennsylvania Supreme Court would hold that placing mental condition at issue in civil action waives psychologist-patient privilege). Lastly, we agree that allowing a plaintiff "to hide ... behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice." *Id.* at 145.

■ We also find that Plaintiff has placed her confidential communications with her psychiatrist at issue in this litigation. Plaintiff must establish as the first element of her prima facie case of unlawful discrimination that she belongs to a protected category under the ADA. *Olson v. General Electric Astrospace*, 101 F.3d 947, 951 (3d Cir.1996). The ADA protects three categories of "qualified individuals with a disability," 42 U.S.C. § 12112(a), by defining disability as

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff alleges that she is a member of all three protected categories by virtue of suffering from clinical depression. (Complaint ¶ 54.) She therefore has placed her mental condition directly at issue in this case, at least with respect to her claims that she belongs to the first two protected categories. *Cf. Holihan v. Lucky Stores*, 87 F.3d 362, 366 (9th Cir.1996) (recognizing that plaintiff who is not actually disabled may still be a member of third protected class), *petition for cert. filed*, 65 U.S.L.W. 3370 (U.S. Nov. 5, 1996) (No. 96–723); *Olson*, 101 F.3d at 954 (same). Plaintiff must therefore authorize the release of all records that contain confidential communications with her psychiatrist that are relevant to her mental condition during the time she was in Defendant's employ.

■ As noted *supra*, it is not clear the extent to which Defendant's motion concerns the records of medical providers other than Plaintiff's psychiatrist. The only privilege

Plaintiff asserts is the psychotherapist-patient privilege, and this we have held has been waived. Further, the federal common law does not recognize a more general physician-patient privilege. *Whalen v. Roe,* 429 U.S. 589, 602 n. 28, 97 S.Ct. 869, 877 n. 28, 51 L.Ed.2d 64 (1977); *U.S. v. Colletta,* 602 F.Supp. 1322, 1327 (E.D.Pa.), *aff'd.,* 770 F.2d 1076 (3d Cir.1985). Moreover, even if we applied Pennsylvania's statutory physician-patient privilege, 42 Pa.Cons.Stan.Ann. § 5929, we would find this privilege waived for similar reasons. Plaintiff alleges that her mental condition necessitated anti-depressant medication that made it difficult to wake up in the morning. Plaintiff may not now. claim that records reflecting her need for this medication and whether it had the side effects she alleges to be privileged. These records are at issue in this litigation, thus Plaintiff must authorize their release as well.

## 2. The Independent Medical Examination

■ Defendant seeks an order pursuant to Rule 35(a) compelling Plaintiff to submit to an independent examination by its expert forensic psychiatrist. Defendant proposes a face-to-face interview examination lasting two to three hours and not entailing any physical examination or psychological tests. We may order such an examination only if Plaintiff's medical or physical condition is "in controversy" and upon a showing of "good cause." Fed.R.Civ.P. 35(a); *see Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). The Supreme Court has noted that these requirements

> are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which an examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

*Id.* at 118, 85 S.Ct. at 242–43. Applying this standard, courts tend to order such examinations where "(1) there is a separate tort claim for emotional distress, (2) the plaintiff alleges that he suffers from a severe *ongoing* mental injury or psychiatric disorder, (3) the plaintiff will offer expert testimony to support the

claim, or (4) the plaintiff concedes his mental condition is in controversy." *Smith v. J.I. Case Corp.,* 163 F.R.D. 229, 230 (E.D.Pa. 1995) (citations omitted) (emphasis added).

This case fits within the second category of cases to a limited extent. Plaintiff's current mental condition is "really and genuinely in controversy" in this action to the extent that Plaintiff alleges that her depression "has had a long-term impact on her mental state" within the meaning of 29 C.F.R. § 1630.2(j)(2). (Complaint ¶ 54.) Though this is not an allegation of injury in the sense that Plaintiff claims any damages for the "impact," *cf. Duncan v. Upjohn Co.,* 155 F.R.D. 23 (D.Conn.1994); *Tomlin v. Holecek,* 150 F.R.D. 628 (D.Minn.1993), we agree with Defendant that Plaintiff has nonetheless placed her current psychiatric state in controversy with this allegation. Defendant has demonstrated good cause for ordering the examination as to this allegation because we agree that its expert must have "some limited opportunity" to examine Plaintiff to determine the nature and extent of this alleged long-term impact. (Def.'s Mem. at 9.) Generally, however, Plaintiff's Complaint concerns her mental state while she was employed by Defendant from 1991 to 1994 and refers to her alleged disability in the past tense. Moreover, Plaintiff has not asserted a separate claim for emotional distress. *See Smith,* 163 F.R.D. at 230. We therefore conclude that though Plaintiff's current mental state may well be relevant to this litigation, her current mental condition is "really and genuinely in controversy" only to the limited extent described above. Accordingly, we order Plaintiff pursuant to Rule 35(a) to submit to an independent psychiatric examination concerning only the alleged long-term impact of her depression on her current mental state.