## Beth Lovell KIRCHNER

v.

## MITSUI & CO. (U.S.A.), INC., et al.

### No. 3:97–1113.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 16, 1998.

William S. Lockett, Jr., Knoxville, TN, for plaintiff.

H. Rowan Leathers, III, Nashville, TN, Ronald M. Green, New York, Larry W. Bridgesmith, Nashville, TN, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court are a Motion by Defendant Mitsui & Co. (USA) to Compel Discovery and to Set Aside in Part the Magistrate Judge's September 16, 1998 Order (Docket No. 70) and Plaintiff's Motion Objecting to Portions of Magistrate Judge's Non–Dispositive Order (Docket No. 73). The parties seek review of the Magistrate Judge's Order dated September 18, 1998 (Docket No. 65).

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Rule 303(g) of the Local Rules for Magistrate Proceedings, the Court may reverse or modify the ruling of the Magistrate Judge only if it is clearly erroneous or contrary to law. For the reasons described herein, the Magistrate Judge's Order (Docket No. 65) is REVERSED in part and AFFIRMED in part.

## FACTS

Plaintiff brought this action pursuant to the Tennessee Human Rights Act ("THRA"), Tennessee Code Annotated, Sections 4–21–301, *et seq.,* specifically alleging hostile work environment, quid pro quo sexual harassment and retaliation against her former employer, its parent corporation and her former boss and supervisor. Plaintiff also alleges state law causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress and assault and battery. Plaintiff's First Amended Complaint relates to alleged misconduct by Defendant Aoki, her immediate supervisor and a Vice President and General Manager of Mitsui U.S.A., during a period of time from 1992 until Mr. Aoki left Mitsui U.S.A. in January of 1997. Plaintiff, in her Amended Complaint, seeks compensatory damages for "severe emotional

distress"[1] against all Defendants and asserts a claim for intentional infliction of emotional distress (Count VIII) against Defendant Aoki.

Plaintiff initially notified Defendants that she intended to call a psychiatrist, Dr. Karen Rhea, as an expert witness. Plaintiff has now notified Defendants that Dr. Rhea will be testifying only as a fact witness. Docket No. 84. Dr. Rhea apparently has knowledge of certain facts relevant to Plaintiff's emotional distress claim, and her records have been produced to Defendants by Plaintiff. Docket No. 84. Plaintiff, of course, can testify on the issue of emotional distress.

In the course of discovery in this action, both Plaintiff and Defendant Mitsui U.S.A. filed Motions to Compel, which were granted in part and denied in part by the Magistrate Judge. *See* Order (Docket No. 65) and Memorandum (Docket No. 66). From that Order, both parties seek review by this Court.

## DEFENDANT'S MOTION

■ Defendant Mitsui U.S.A. specifically asks this Court to set aside the portion of the Magistrate Judge's Order in which he held that Plaintiff was not required to produce any medical, psychological, psychiatric or social worker records beyond those upon which her expert witness relies. The Magistrate Judge found that such records were privileged and that any waiver of the privilege should be co-extensive with the proof Plaintiff submits to support her claim for mental distress damages. *See* Docket No. 66, p. 18.[2]

Rule 501 of the Federal Rules of Evidence provides that in civil actions, with respect to an element of a claim or defense as to which State law supplies the rule of decision (here, the THRA), the privilege of a witness or person shall be determined in accordance with State law. Fed.R.Evid. 501. Accordingly, the Court looks first to Tennessee law.[3]

Plaintiff relies upon several statutory provisions in asserting this privilege. Tennessee Code Annotated, Section 24–1–207, provides that communications between a patient and a psychiatrist are privileged in proceedings before a court. "Neither the psychiatrist nor any member of the staff may testify or be compelled to testify as to such communications or otherwise reveal them in such proceedings without consent of the patient except: (1) in proceedings in which the patient raises the issue of the patient's mental or emotional condition . . . ." Tenn.Code Ann. § 24–1–207(a).

Tennessee law also provides that confidential relations and communications between licensed psychologists and their clients and between social workers and their clients are placed upon the same basis as those provided by law between attorney and client. Tenn. Code Ann. §§ 63–11–213 and 63–23–107.[4] The statutes regarding communications with psychologists and social workers do not expressly include the exception for proceedings in which the patient raises the issue of her mental or emotional condition.

In holding that Plaintiff need not produce this information except to the extent her own expert witness relies thereupon, the Magis-

1. Docket No. 7, ¶ 26, Counts I and II (Hostile Work Environment); III and IV (Sexual Harassment); V (Retaliation); VI (Malicious Harassment); VII and VIII (Intentional and Negligent Infliction of Emotional Distress); IX (Assault and Battery). Counts VI (Malicious Harassment) and VIII (Negligent Infliction of Emotional Distress) were dismissed by prior Orders of the Court (Docket Nos. 16 and 59).

2. The Magistrate Judge held: "As to the defendant's motion to compel, under recent federal decisions, the defendants are entitled to as much of plaintiff's medical records that she places in issue and is relied upon by her expert witness." (Memorandum, Docket No. 66, p. 2) "The Magistrate Judge concludes that given this privilege, any waiver of her psychotherapist privilege should be co-extensive with the proof she will submit to support the damages for mental distress. Thus, the information utilized by Dr. Rhea, plaintiff's expert, should be disclosed in response to these discovery requests." (*Id.* at p. 18).

3. Defendant complains that the Magistrate Judge applied federal law and then cites federal law for its own argument. *See, e.g.,* Defendant's Memorandum (Docket No. 71) pp. 8, 11, 14–15.

4. Although Plaintiff also cites Tennessee Code Annotated, Sections 33–10–301 through 304, those statutes deal with communications concerning violent behavior of clients, not applicable in this case.

trate Judge relied upon *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), in which the Court recognized a federal common law psychotherapist-patient privilege (116 S.Ct. at 1928),[5] and upon the reasoning of *Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225 (D.Mass.1997), in which the court held that a plaintiff must use the privileged communication as evidence herself before she waives the privilege. *Id.,* pp. 229–30.

Defendant argues that the Magistrate Judge applied the wrong legal standard, and that, under Tennessee law, such information must be produced. To support this contention, Defendant cites the Tennessee statutes noted above, Tennessee criminal cases, and cases from other jurisdictions. Basically, Defendant contends that Plaintiff has waived any privilege by suing for emotional distress damages in this case.

It is abundantly clear that Plaintiff is entitled to a privilege for communications between herself and any psychiatrist, psychologist or social worker with whom she had a therapeutic counseling relationship. The issue before the Court is whether Plaintiff, by suing for emotional distress damages, has waived that privilege; and, if so, to what extent.

Neither side has cited the Court to any Tennessee case directly on point.

The Court begins its inquiry with Tennessee statutory law on privileges. Plaintiff's psychiatrist-patient communications are privileged except in proceedings in which she raises the issue of her mental or emotional condition. Tenn.Code Ann. § 24–1–207. Plaintiff's psychologist and social worker privileges are to be analyzed like the attorney-client privilege, including common law principles of waiver. Tenn.Code Ann. §§ 63–23–107 and 63–23–213.

Because there is no Tennessee case directly on point, the Court, like the Magistrate Judge, finds it helpful to look for guidance from other jurisdictions.

The Supreme Court in *Jaffee* recognized a privilege for confidential communications between a psychotherapist and her patients and, as does the Tennessee statute, recognized that such a privilege could be waived. *Jaffee,* 518 U.S. 1, 15, n. 14, 116 S.Ct. 1923, 1931, n. 14, 135 L.Ed.2d 337, 348, n. 14. The Court did not elaborate on what conditions would constitute such a waiver. The Court did find, in addition, that balancing of interests is no longer permitted in deciding whether the federal privilege applies. *Id.,* 116 S.Ct. at 1923. As the district court in *Vanderbilt* stated, after *Jaffee,* a court cannot force disclosure of otherwise privileged evidence solely because it may be extremely useful to the finder of fact. *Vanderbilt,* 174 F.R.D. at 229.

In *Vanderbilt,* cited by the Magistrate Judge, the court found that a plaintiff does not automatically waive the federal psychotherapist-patient privilege by seeking emotional distress damages in an employment discrimination action.[6] 174 F.R.D. at 228. The court held that the plaintiff must use the privileged communication as evidence herself before she waives the privilege. *Id.* The *Vanderbilt* court stated:

> [T]his court reasons that the privilege is waived if the communication between a psychotherapist and a patient is, itself, put at issue by the patient. A patient whose cause of action relies on the advice or findings of her psychotherapist cannot claim the privilege.... Plaintiff, here, is not using the privileged communication as a sword. Were she to introduce evidence regarding the substance of her conversations with her psychotherapist in order to further her claim of emotional damage, this court would agree that she could not shield the communication from others. She has, however, done no such thing.

174 F.R.D. at 229–30.

Other courts have rejected the more restrictive approach of *Vanderbilt.* In *Sidor v. Reno,* 1998 WL 164823 (S.D.N.Y. April 7,

**5.** *Jaffee* recognized Tennessee's statutory privileges for both psychotherapists and licensed social workers. 116 S.Ct. at 1929, n. 11 and 1931, n. 17.

**6.** *Vanderbilt* was an action based upon federal law, and the court applied the federal law of privilege. 174 F.R.D. at 227.

1998),[7] the court cited Weinstein's *Federal Evidence* for the proposition that "a claim for mental pain and suffering waive[s] protection of the psychotherapist-patient privilege because the claim put[s] the patient's mental condition in ·issue." *Id.* at \*2. The court recognized, however, that the records must be relevant in time and subject matter. *Id.* at \*3.

Similarly, in *Equal Employment Opportunity Comm'n v. Danka Industries, Inc.*, 990 F.Supp. 1138 (E.D.Mo.1997), the court, in a Title VII case, held that the defendant was entitled to discover to what extent the plaintiffs' mental condition, prior to the alleged harassment, may have contributed to any emotional distress for which they were seeking damages. *Id.* at 1142. The court found the mental condition of the plaintiffs to be directly related to the issue of damages. *Id.*

In *Vann v. Lone Star Steakhouse & Saloon of Springfield, Inc.*, 967 F.Supp. 346 (C.D.Ill.1997), relied upon by both parties here, the court found that the records of the plaintiff's psychotherapist were subject to discovery and not protected by privilege. *Id.* at 350. The plaintiff in *Vann*, however, had disclosed her psychotherapist as an expert witness who would give opinion testimony at trial. *Id.*

In *Sarko v. Penn–Del Directory Co.*, 170 F.R.D. 127 (E.D.Pa.1997), that court held, in an Americans with Disabilities Act case, that, under federal common law, a party waives the privilege by placing her mental condition at issue. *Id.*, p. 130.[8] Among other reasons, the *Sarko* court noted that policy considerations underlying this privilege are analogous to those underlying the attorney-client privilege, which is waived when the advice of counsel is placed at issue in litigation. *Id*

The same court had found, in *Topol v. Trustees of Univ. Of Pa.*, 160 F.R.D. 476 (E.D.Pa.1995), a sexual harassment case, that the plaintiff placed her mental state in issue by alleging that her sexual relationship with a professor caused her to become "depressed, anxious, and fearful" and by seeking damages for mental and emotional suffering. *Id.* at 477. Thus, the court held, she waived any applicable psychotherapist-patient privilege. *Id.*

In the case of *Vasconcellos v. Cybex Int'l, Inc.*, 962 F.Supp. 701 (D.Md.1997), a claim under federal and state law for sexual harassment, the court quashed a subpoena issued to the plaintiff's treating psychiatrist, noting that the request was too broad. *Id.* at 709. Although the court recognized that the psychotherapist-patient privilege can be waived when a plaintiff's mental state is placed in issue, it also noted the important policy behind the existence of the privilege. *Id.* Finding that the plaintiff had a right to have discovery limited to information that was directly relevant to the lawsuit, the court quashed the subpoena; but, it held that the defendants could issue a new subpoena under two conditions: (1) if they could show cause as to why such an intrusion into the therapeutic relationship was the only possible means to obtain relevant information; and (2) if the subpoena was much more narrowly-tailored in order to avoid any greater infringement than was necessary on the confidential relationship. *Id.*

With that background for guidance, the Court turns to the Tennessee statutes and case law.

Plaintiff's claim of a psychiatrist-patient privilege, pursuant to Tenn.Code Ann. § 24–1–207, is answered by the statute itself. Section 207(a)(1) expressly provides that the privilege does not apply in "proceedings in which the patient raises the issue of the patient's mental or emotional condition." Tenn.Code Ann. § 24–1–207(a)(1). In this case, the exception to the privilege clearly controls because Plaintiff seeks damages for emotional distress and she has thereby raised the issue of her mental and emotional condition.[9] Based on the face of the statute,

---

**7.** *Sidor* was also a federal case, based upon the Rehabilitation Act of 1973. 1998 WL 164823 at \*1.

**8.** The plaintiff in *Sarko* placed her confidential communications with her psychiatrist at issue, said the court, because her mental condition was

directly relevant to her claimed disability, clinical depression. *Sarko*, 170 F.R.D. at 130.

**9.** Plaintiff also asserts a claim against Defendant Aoki for intentional infliction of emotional distress which includes emotional distress as an

and the grounds for the waiver of similar privileges discussed in the cases cited above,[10] the Court finds Plaintiff has waived her psychiatrist-patient privilege in this case. Accordingly, the Magistrate Judge's Order is REVERSED on the psychiatrist-patient privilege issue.

■ The psychologist-client privilege, Tenn.Code Ann. § 63–11–213, and social worker-client privilege, Tenn.Code Ann. § 63–23–107, are placed on the same basis as the attorney-client privilege. Tenn.Code Ann. §§ 63–11–213; 63–23–107.

In *Bryan v. State of Tennessee,* 848 S.W.2d 72, 81 (Tenn.Crim.App.1992), the Court identified, in the context of a petition for post-conviction relief, various instances when the attorney-client privilege is waived by a party under Tennessee law. The *Bryan* Court cited with approval the following test for waiver of the attorney-client privilege:

In *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975), the court held that a party asserting the attorney-client privilege has impliedly waived it through the party's own affirmative conduct where three conditions exist:

(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;

(2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and

(3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Bryan,* 848 S.W.2d at 81. (*Hearn* is a Section 1983 prisoner civil rights case).

Applying the *Bryan* test, as well as the principles of waiver discussed in the cases cited above,[11] to the facts of this case, the Court finds that the Plaintiff has waived her psychologist and social worker privileges. Plaintiff filed suit, made her emotional distress an issue in the litigation, and application of the privilege would unfairly deny Defendants access to information vital to their defenses. Accordingly, the Order of the Magistrate Judge is REVERSED on the psychologist and social worker privilege issues.

■ Defendant requests the Plaintiff's mental health records since 1980. Plaintiff's employment with Defendant began in December of 1990. Her complaint alleges sexual harassment by Defendant Aoki beginning in 1992.

Having found that the Plaintiff has waived her psychiatrist, psychologist and social worker privileges, it does not follow that the Defendants should get all the documents that they want. The Court is not convinced that the documents dated prior to Defendant Aoki's employment in 1992 at the Nashville office are currently relevant or that the production request is reasonably calculated to lead to the discovery of admissible evidence at this time.

Accordingly, Plaintiff shall produce the psychiatrist, psychologist and social worker documents from the date of Defendant Aoki's Nashville employment to the present. Only after these documents are produced will it be known whether earlier records, including any pre-existing conditions or treatments, are properly discoverable and to what extent nondiscoverable information must be redacted. Pertinent motions may be filed, if necessary, at that time. Any such motions will be considered by the District Judge, since it will require implementation of this opinion.

element of the cause of action. T.P.I.—Civil 4.35 (Intentional Infliction of Emotional Distress).

10. *Sidor v. Reno,* 1998 WL 164823 (S.D.N.Y.); *Equal Employment Opportunity Commission, et al. v. Danka Indus., Inc.,* 990 F.Supp. 1138 (E.D.Mo.1997); *Vann v. Lone Star Steakhouse & Saloon of Springfield, Inc.,* 967 F.Supp. 346 (C.D.Ill.1997); *Vasconcellos v. Cybex International, Inc.,* 962 F.Supp. 701 (D.Md.1997); *Sarko v. Penn–Del Directory Company,* 170 F.R.D. 127 (E.D.Pa.1997).

11. *Sidor v. Reno,* 1998 WL 164823 (S.D.N.Y.); *Equal Employment Opportunity Commission, et al. v. Danka Indus., Inc.,* 990 F.Supp. 1138 (E.D.Mo.1997); *Vann v. Lone Star Steakhouse & Saloon of Springfield, Inc.,* 967 F.Supp. 346 (C.D.Ill.1997); *Vasconcellos v. Cybex International, Inc.,* 962 F.Supp. 701 (D.Md.1997); *Sarko v. Penn–Del Directory Company,* 170 F.R.D. 127 (E.D.Pa.1997).

The Court stresses that the fact that Plaintiff must produce certain documents does not mean all the documents produced, or all the facts therein, will necessarily be admissible at trial. *See* Fed.R.Evid. 403.

Also, the documents to be produced by Plaintiff shall be subject to an appropriate protective order. The parties shall attempt to reach agreement on the terms of the protective order without intervention of the Court. Any of the subject documents that are subsequently filed with the Court shall be placed under seal.

### PLAINTIFF'S MOTION

██ Plaintiff seeks information from Defendant Mitsui, U.S.A. concerning other claims and complaints of sexual harassment nationwide for the period January 1, 1988 to date and information concerning any audits conducted by Defendant to ascertain and ensure compliance with sexual harassment policies. The Magistrate Judge found that, because the Amended Complaint alleges only harassment by Defendant Aoki, such discovery should be limited to sexual harassment claims or complaints against Defendant Aoki. Docket No. 66, p. 16.

In her Motion Objecting to the Magistrate Judge's Order, Plaintiff argues that the requested information is relevant to her retaliation claim, not her sexual harassment claim against Defendant Aoki. Even though she has not alleged a pattern or practice of sexual harassment, Plaintiff avers, she has alleged retaliation, and the information sought is relevant to compare the treatment received by other complainants to that received by Plaintiff. Plaintiff contends that the discovery will show that she was treated differently from complainants in other investigations of sexual harassment at Mitsui, U.S.A.

Plaintiff's Motion is GRANTED in part and DENIED in part as follows. The Court agrees with the Magistrate Judge that Plaintiff's discovery should be limited. The Court finds, however, that Plaintiff is entitled to the information she seeks for the Nashville office of Mitsui, U.S.A., whether or not the complaints relate to Defendant Aoki. Plaintiff is not entitled to such information regarding Defendant's other offices.

### CONCLUSION

For the reasons described above, the Magistrate's Order (Docket No. 65) of September 16, 1998, is REVERSED in part and AFFIRMED in part. Defendant's Motion to Compel Discovery and to Set Aside in Part the Magistrate Judge's September 16, 1998 Order (Docket No. 70) and Plaintiff's Motion Objecting to Portions of Magistrate Judge's Non–Dispositive Order (Docket No. 73) are likewise GRANTED in part and DENIED in part.

IT IS SO ORDERED.