**Richard Wayne ADAMS, Plaintiff,**

v.

**ARDCOR, American States Insurance, Cordeck Sales Inc., Contour Roll Company Inc., and Speaker Electric Inc., Defendants.**

No. 97–C–0375.

United States District Court,
E.D. Wisconsin.

Aug. 1, 2000.

Constantine N. Dranias, Attorney at Law, Dranias, Harrington & Wilson, Chicago, IL, for plaintiff.

Russell A. Klingaman, Attorney at Law, Hinshaw & Culbertson, Milwaukee, WI, for defendant Ardcor.

Jan M. Schroeder, Attorney at Law, Peterson, Johnson & Murray, Milwaukee, WI, for defendant American States Insurance Co.

W. Timothy Steinle, Attorney at Law, Terschan Steinle & Ness, Milwaukee, WI, for defendant Cordeck Sales Inc.

Mary C. Flanner–Strack, Attorney at Law, Baxter O'Meara & Samuelsen, Milwaukee, WI, for defendant Contour Roll Company Inc.

Steven T. Caya, Attorney at Law, Fellows Piper & Schmidt, Milwaukee, WI, for defendant Speaker Electric Inc.

## MEMORANDUM AND ORDER

GORENCE, United States Magistrate Judge.

This action, which was filed in Walworth County Circuit Court and removed to federal court on April 14, 1997, arises out of personal injuries sustained by the plaintiff, Richard Wayne Adams, on May 7, 1996, while working for his employer, K.A.M. Industries, d/b/a Cordeck, Inc. The plaintiff alleges that he sustained severe injuries as a result of his left hand being caught in a roll-forming machine while he was cleaning the machine.

Defendant Ardcor, Division of American Roll Tooling, Inc., (Ardcor) has filed motions to compel disclosure of the plaintiff's "black book" and related materials, to compel discovery of items removed from expert's file and to compel the plaintiff to sign authorizations for psychological records and answer deposition questions. By letter of April 12, 2000, defendant Cordeck Sales, Inc. (Cordeck) joined in the motions. The motion to compel the plaintiff to sign authorizations for psychological records and answer deposition questions will be addressed herein. The remaining motions will be addressed in a separate decision.

### Motion to Compel Plaintiff to Sign Medical Authorizations

Defendant Ardcor moves this court for an order compelling the plaintiff to sign medical authorizations for release of psychological records and to answer deposition questions concerning any pre-accident psychological problems, examinations, evaluations, testing and treatment. Defendant Ardcor asserts that the plaintiff's third amended complaint contains allegations of psychological damage and that any pre-accident psychological records of the plaintiff are highly relevant to the plaintiff's claims. It further asserts that the

evidence is also reasonably calculated to lead to the discovery of admissible evidence.

In opposing the motion, the plaintiff asserts that the sought-after psychological records predate the accident at issue in this case by a year or more and were generated in the course of a custody battle which followed a hotly contested divorce proceeding. The plaintiff further states that the records are not asserted by the plaintiff to support his claim of psychological injury and were never disclosed to the plaintiff's treating psychologist and expert witness. The plaintiff cites *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), in support of his position.

In *Jaffee*, the Court recognized a psychotherapist privilege covering confidential communications made to a psychotherapist which protects such communications from disclosure pursuant to Rule 501 of the Federal Rules of Evidence. This privilege is not subject to a balancing test. The Court held that a privilege of protecting confidential communications between a psychotherapist and her patient "promotes sufficiently important interests to outweigh the need for probative evidence." *Id.* at 9–10, 116 S.Ct. 1923 (quoting *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 63 L.Ed.2d 186 [1980]).

The Court stated: "Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'" *Id.* at 10, 116 S.Ct. 1923 (quoting *Trammel*, 445 U.S. at 51, 100 S.Ct. 906). Therefore, effective psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." 518 U.S. at 10, 116 S.Ct. 1923. The Court stated that given the sensitive nature of problems for which persons consult psychotherapists, "the mere possibility of disclosure may impede the development of the confidential relationship necessary for successful treatment." *Id.*

The Court held that protecting confidential communications between a psychotherapist and her patient from involuntary disclosure serves important private interests as well as

the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. *Id.* at 11. The Court further found that, in contrast to the significant public and private interests supporting recognition of the privilege, "the likely evidentiary benefit that would result from the denial of the privilege is modest." *Id.* The psychotherapist privilege covers confidential communications made to licensed psychiatrists and psychologists as well as confidential communications made to licensed social workers in the course of psychotherapy. *Id.* at 15.

The Court recognized that the psychotherapist-patient privilege can be waived. *Id.* at 14 n. 14. The Court, however, did not elaborate on what would constitute waiver of the privilege. In fact, the Court expressly declined to define the scope of the privilege, stating "it is neither necessary nor feasible to delineate its full contours in a way that would 'govern all conceivable future questions in this area.'" *Id.* at 18 (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 386, 101 S.Ct. 677, 66 L.Ed.2d 584 [1981]).

In decisions post-dating *Jaffee,* courts have recognized that the privilege is waived implicitly when the plaintiff's mental condition is made an issue in the litigation. *Vann v. Lone Star Steakhouse & Saloon of Springfield, Inc.,* 967 F.Supp. 346, 349–50 (C.D.Ill.1997)(citing *In re Pebsworth,* 705 F.2d 261, 262 [7th Cir.1983] and *Sarko v. Penn–Del Directory Co.,* 170 F.R.D. 127, 130 [E.D.Pa.1997]). However, courts vary in their determination of when a plaintiff has placed his or her mental condition "in issue." *See Ruhlmann v. Ulster County Department of Social Services,* 194 F.R.D. 445, 450–51 (N.D.N.Y.2000) (citing and summarizing cases).

Some courts hold that the mere assertion of a claim for emotional distress constitutes a waiver, while other cases hold that the privilege is waived if the plaintiff makes affirmative use of the privileged material in connection with her prosecution of the case. *Id.* at 447–49; *see also, Booker v. City of Boston,* 1999 WL 734644, *1 (D.Mass.1999) (citing cases). Some courts in examining these various cases have attempted to harmonize these

approaches. *Ruhlmann,* 194 F.R.D. 445, 449–50; *Hucko v. City of Oak Forest,* 185 F.R.D. 526, 528–29 (N.D.Ill.1999).

*McKenna v. Cruz,* 1998 WL 809533 (S.D.N.Y.1998) is representative of what has been characterized as one line of cases. In *McKenna,* the court held that the psychotherapist-patient privilege is waived where the plaintiff chooses to put his psychiatric or emotional condition in issue. *Id.* at *2 (citing 3 Weinstein's *Federal Evidence,* §§ 504.01, 504.07[7] [2d ed.1997]). In that case, in the context of a 42 U.S.C. § 1983 action, the plaintiff claimed that he suffered "serious and possibly permanent emotional injuries [and] grievous mental emotional distress" when he was subjected to excessive force during an illegal arrest. *Id.* at *1. The plaintiff testified at an examination that he was being treated by a psychiatrist and a psychologist and that his psychologist had diagnosed him as suffering from post-traumatic stress syndrome as a result of the arrest. *Id.*

The plaintiff sought a protective order precluding discovery of records of his psychotherapists while at the same time the plaintiff testified about the diagnosis he received from one of his psychotherapists and was seeking damages for a specific, diagnosable mental condition. The court reasoned that psychological injury claims are similar to those made by plaintiffs in auto accident cases and that in such cases a waiver occurs when plaintiffs "put their physical condition in issue." *Id.* at *2. Therefore, the court held that "a plaintiff who chooses to put his psychiatric or emotional condition in issue should be found to have waived his psychotherapist-patient privilege." *Id.* Further, the court stated that a majority of cases have held that any claim for emotional or psychological injury is a waiver. *See Id.* at *3 (citing cases).

*Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225 (D.Mass.1997) is representative of what has been characterized as the other line of cases. The plaintiff brought claims for employment discrimination and retaliation and sought damages for emotional distress. The defendant filed a motion to compel the plaintiff to produce her psychiatric and psychotherapeutic records, to answer questions

at a deposition concerning the substance of any psychiatric treatment, counseling or psychotherapy she might have undergone, and to allow the deposition of any mental health professionals who had provided such treatment to the plaintiff. The plaintiff opposed the motion and sought a protective order.

The defendant argued that in seeking damages for emotional distress, the plaintiff had placed her emotional state at issue and thereby waived the psychotherapist-patient privilege. *Id.* at 228. The court "assumed for the sake of argument only" that the plaintiff had placed her emotional state at issue by seeking emotional distress damages. *Id.* at n. 3. The court held that the plaintiff "must use the privileged communication as evidence herself before she waives the privilege." *Id.* at 228.

In so concluding, the court noted that in *Jaffee*, the Court observed that the attorney-client privilege and the psychotherapist-patient privilege are both rooted in the imperative need for confidence. The court stated that it was therefore reasonable to suggest that the scope of the two privileges should be similar. *Id.* Analogizing to the waiver of the attorney-client privilege, the court held that "the privilege is waived if the communication between a psychotherapist and a patient is, itself, put at issue by the client." *Id.* at 229.

The court agreed with the premise that a privilege "cannot and should not at once be used as a shield and a sword." *Id.* at 230 (quoting *Inserra v. Hamblett & Kerrigan, P.A.,* 1995 WL 54402 [D.N.H.1995] [citations omitted] [commenting on attorney-client privilege] ). However, it noted that the plaintiff in the case before it was not using the privileged communication as a sword. The court stated that if the plaintiff was to introduce evidence regarding the substance of her conversations with her psychotherapist in order to further her claim of emotional damage, it would agree that she could not shield the communication from others, but she had, however, "done no such thing." *Id.*

The court in *Hucko* took a varying view of the scope of the "implied waiver" doctrine in the context of the psychotherapist-patient privilege. The court noted that in analyzing the question of waiver, the various district court decisions begin with the "common premise" that it is appropriate to consider the question of implied waiver of the psychotherapist-patient privilege by analogizing to the circumstances which give rise to an implied waiver of the attorney-client privilege. *Id.* at 528.

The court noted that such approach finds supports in *Jaffee* since in recognizing the psychotherapist-patient privilege, the Supreme Court explained that such privilege serves private and public interests similar to those advanced by the attorney-client privilege. *Id.* The court in *Hucko* stated that "the principles of the implied waiver of the attorney-client privilege should apply in determining what is sufficient to constitute an implied waiver of the psychotherapist-patient privilege." *Id.* at 529.

The court noted that the court of appeals for this circuit recognizes that the attorney-client privilege is generally waived where the "client asserts claims or defenses that put his attorney's advice at issue in the litigation." *Id.* (quoting *Garcia v. Zenith Electronics Corp.,* 58 F.3d 1171, 1175 n. 1 [7th Cir.1995] ). The court further noted that in *Garcia v. Zenith Electronics Corp.,* 58 F.3d 1171, 1175 n. 1 (7th Cir.1995), the appellate court cited with approval *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851 (3rd Cir.1994) which considered the scope of the implied waiver doctrine in detail. Under such standard, the "common thread" leading to waiver is that "the client has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue." *Hucko,* 185 F.R.D. at 529 (quoting *Rhone–Poulenc,* 32 F.3d at 863).

The court observed that the court in *Rhone–Poulenc* emphasized that what is necessary for a waiver of the attorney-client privilege is not merely for the client's state of mind to be in issue, but rather for the attorney's advice to be in issue. The court stated:

Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of coun-

sel is placed in issue when the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

185 F.R.D. at 529 (quoting *Rhone–Poulenc*, 32 F.3d at 863).

In *Hucko*, the plaintiff filed a motion for protective order in an action pursuant to 42 U.S.C. § 1983 as well as "pendent" state law claims for assault and battery based on the alleged misconduct of law enforcement officers during the plaintiff's arrest. 185 F.R.D. at 527. The plaintiff asserted as part of his claim for damages that he "experienced humiliation, emotional distress, [and] pain and suffering." *Id.* Plaintiff Hucko did not seek to offer any treating psychotherapist or independent expert testimony to advance his claim of emotional harm. *Id.*

The court held that upon application of the principles set forth in *Rhone–Poulenc*, plaintiff Hucko had not waived the psychotherapist-patient privilege merely by asserting that the defendants' alleged misconduct caused him to suffer emotional harm. *Id.* at 529. The court observed that the plaintiff did not seek to offer the testimony of "medical experts which under the reasoning of *Rhone–Poulenc* would present a clear case of implied waiver." *Id.*

The court further stated that it was not presented with a situation where the plaintiff's testimony about his alleged emotional harm resulting from the defendants' conduct "necessarily will reveal or rely upon medical expert testimony." *Id.* Rather, plaintiff Hucko could testify about the alleged effect of the defendants' conduct without the aid of expert testimony. *Id.* The court emphasized that the plaintiff had "not offered, or indicated any intent to offer, evidence of his prior consultations with psychotherapists in order to prove his claim of emotional harm" nor had the plaintiff "indicated any intent to offer independent expert testimony to establish his claim of emotional harm or to recite what he had been told by his doctors." *Id.*

■ As noted in *Santelli v. Electro–Motive*, 188 F.R.D. 306, 309 (N.D.Ill.1999), a party cannot inject her psychological treatment, conditions or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues. In *Santelli*, an employee brought a Title VII action against her employer alleging sex discrimination and retaliation. The employer moved to compel the production of the employee's medical records, specifically, records of psychotherapy, alcohol and drug treatment and HIV testing. The defendant argued that by making a claim of emotional distress, the plaintiff had waived any privileges which might otherwise prevent the production of such records. The court ruled that the plaintiff had not waived the psychotherapist-patient privilege thereby barring the defendant from discovering the details of her treatment. *Id.* at 309.

In its analysis of the waiver issue the court reviewed the case law and critiqued the "narrow waiver rule" as described in *Santelli*, 188 F.R.D. at 308. The court observed that the problem with a narrow waiver rule finding that the privilege is only waived when the plaintiff introduces privileged communications in evidence directly or by calling the particular psychotherapist as a witness is that it enables a party who has undergone psychotherapy to offer at trial only the testimony of a retained, non-treating expert and thereby prevent discovery of what she had told her treating psychotherapist. *Id.* "[T]his would allow the party to provide the expert with a selective 'history,' while preventing the veracity of that history from being tested by comparing it to what the party had reported to her treating psychotherapist." *Id.*

■ Such a result is unacceptable because it would allow the privilege holder to thwart the truth-seeking process by using the privilege as both a shield and a sword. *Id.* (citing *Allen v. Cook County Sheriff's Department*, 1999 WL 168466 at * 2 (N.D.Ill. March 17, 1999)) ("the defendants should have ample opportunity to scrutinize the basis for the opinions of Allen's therapists if she attempts to elicit therapist testimony or evidence to prove her damages caused by her alleged emotional distress."); *EEOC v. Danka Industries, Inc.*, 990 F.Supp. 1138, 1142 (E.D.Mo.1997) ("Plaintiffs cannot rely on ad-

vice given by certain psychotherapists to support their claims while at the same time expect to keep confidential advice given by other psychotherapists that may weaken their claims.").

■ Given the importance of the interests advanced by the psychotherapist patient-privilege, the court does not deem it proper to find a waiver based solely upon the inclusion of a request for damages based on emotional distress. The rationale of *Hucko* is persuasive and is consistent with the analytical framework utilized by the Supreme Court in *Jaffee*. This court believes that the approach in the context of determining a waiver of the attorney-client privilege is appropriately applied to the determination of a waiver of the psychotherapist-patient privilege. *Hucko* also employs the framework for determining whether there is a waiver of the attorney-client privilege which has been approved by the court of appeals for this circuit. Thus, this court will follow the approach of *Hucko* complemented by the common sense approach of *Santelli.*

■ In this case, the plaintiff asserts that he suffered "pain and suffering and psychological damage." (Third Amended Complaint ¶ 7). He has named a psychological expert, Keith Bjorge, Psy. D., as an expert witness in this case. The plaintiff states that Dr. Bjorge did not review or rely upon psychological records and information generated during the course of the plaintiff's prior proceedings. However, Dr. Bjorge testified that information about prior counseling would be significant to him. (Affidavit of Russell A. Klingaman in Support of Motion to Compel Discovery of Pre–Accident Psychological Records and Related Information [Klingaman Aff.] ¶ 8 and Exh. G at 60). Thus, it appears that the plaintiff intends to offer the testimony of a medical expert in support of his psychological damage claim.

Unlike the facts in *Hucko,* the plaintiff in this case has named a psychologist as an expert witness. *See Hucko,* 185 F.R.D. at 527. The plaintiff has not named his prior treating mental health professional as a witness but apparently is offering other expert witness testimony to establish his claim for psychological damages. Under the reasoning of *Rhone–Poulenc,* the plaintiff's offer of the testimony of a medical expert would constitute a clear case of implied waiver. Since the plaintiff intends to the use the testimony of his treating psychotherapist to advance his claims of emotional distress, he may not preclude the defendants from discovering the psychological records which were generated in the course of a custody battle. Thus, this court concludes that the plaintiff has impliedly waived the psychotherapist-patient privilege.

In sum, the court has carefully considered the arguments of counsel and the applicable case law. Based on such review, the court finds that the plaintiff has waived the psychotherapist-patient privilege in this case. Accordingly, defendant Ardcor's motion to compel the plaintiff to sign medical authorizations for release of psychological records and answer deposition questions concerning pre-accident psychological problems, examinations, evaluations, testing and treatment will be granted.

### ORDER

**NOW THEREFORE IT IS ORDERED** that the defendant Ardcor's motion to compel the plaintiff to sign authorizations for psychological records and answer deposition questions (Docket # 156) be and hereby is **granted**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Local Rule 13.03 (E.D.Wis.), whereby written objection to any order herein or part thereof may be filed within ten days of service of this order. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.